IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case Number: 1:18-cv-00968 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| TDM INVESTMENTS, LLC d/b/a | ) | |
| GiftCardSpread.com and JOHN DOES 1-5 | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
TDM INVESTMENTS, LLC'S MOTION TO DISMISS**

Defendant TDM Investments, LLC ("TDM") submits the following memorandum of law in support of its motion to dismiss certain portions of the complaint of Delta Air Lines, Inc. ("Delta") pursuant to Fed. R. Civ. P. 12(b)(6). Delta's Count IV (breach of contract) and Count V (tortious interference with contract) should be dismissed in their entirety. In addition, each of Delta's Count I (Lanham Act trademark infringement), Count II (Lanham Act unfair competition), Count III (trademark dilution), Count VI (common law unfair competition), Count VII (common law trademark infringement), and Count VIII (violation of Illinois Uniform Deceptive Trade Practices Act) should be dismissed to the extent they are predicated on the entirely legal secondary-market resale of authentic Gift Cards and eGift codes which Delta itself initially sold.

**I.        Relevant Legal Standards**

In general, a motion to dismiss pursuant to Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Financial Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citing *Camasta v. Joseph A. Bank*

*Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). When ruling on a Rule 12(b)(6) motion to dismiss, the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

II. **This Court Should Dismiss Counts I, II and III With Respect to All Alleged Grounds Except the Erroneous Display of the Delta Skymiles Membership Card.**

Counts I, II and III purport to state claims for trademark infringement, unfair competition, and trademark dilution through tarnishment, each pursuant to the Lanham Act. With the exception of the factual allegations of TDM's erroneous display of an image of a Delta Skymiles membership card on the giftcardspread.com website (*see* Complaint ¶¶ 43-46), each of these claims fails because TDM's actions are protected by the trademark first sale doctrine. Except for that one alleged error, Delta alleges only that TDM is re-selling actual Delta Gift Cards and Delta eGift codes which Delta itself initially sold. Because Delta cannot legally control subsequent re-sales of the actual goods Delta itself sells or distributes, it has no Lanham Act claims against the TDM sales which are the targets of Delta's complaint.

"A trademark owners' right under the Lanham Act to control distribution of its own products is limited by the 'first sale' doctrine." *Hart v. Amazon.com, Inc.*, 191 F.Supp.3d 809, 817 (N.D. Ill. 2016) (granting motion to dismiss on basis of first sale doctrine). More specifically, "with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian International, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995). As a result, resale "of the original article under the producer's trademark is generally neither trademark infringement nor unfair competition." *Id*. Such resale cannot be the basis for trademark dilution,

either, as "[m]erely reselling Plaintiff's genuine products at a discounted price does not constitute dilution by tarnishment." *Brain Pharma, LLC v. Scalini*, 858 F.Supp.2d 1349, 1358 (S.D. Fla. 2012). "Indeed, if Plaintiff's dilution claim is premised solely on Defendant's resale of [Plaintiff's] products at discounted prices, the Court doubts whether Plaintiff can ever state a trademark dilution claim." *Id*.

Because of the first sale doctrine, Delta cannot state claims for trademark infringement, unfair competition, or trademark dilution through tarnishment based on TDM's resale of Delta Gift Cards and Delta eGift codes which Delta itself initially sold. To the extent that Delta's Counts I, II, and III are predicated on TDM's sales of those items and TDM's use of Delta's claimed trademarks in order to advertise such sales, each of the claims in those counts must be dismissed. TDM realizes that each of Counts I, II, and III may also be attempting to state claims on the additional basis of TDM's display of an image of a Delta Skymiles membership card on TDM's website. For purposes of the present motion to dismiss, TDM is not challenging the sufficiency of Counts I, II, and III as they may relate to the alleged display of the Skymiles card or the SKYMILES mark. However, TDM is entitled to a ruling dismissing Counts I, II, and III to the extent that they rest on the alleged use of Delta's claimed trademarks (other than the SKYMILES mark) in relation to re-sales of the Delta Gift Cards and Delta eGift codes which Delta itself initially sold.

**III.    This Court Should Dismiss Count IV for Breach of Contract Because TDM Has Entered Into No Contract With Delta.**

It is axiomatic that a claim for breach of contract requires that there be an actual valid contract to which the defendant is a party. "The elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3)

breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). Here, however, Delta fails to allege the existence of any contract between itself and TDM. Instead, Delta merely alleges that TDM has purchased Delta Gift Cards and Delta eGift codes from third parties after such Cards or codes were previously purchased from Delta by such third parties or yet other parties. *See* Complaint ¶¶ 37-39, 78. Delta makes absolutely no allegation that TDM purchased any Delta Gift Cards or Delta eGift codes directly from Delta itself, or entered into any other contract with Delta. Because Delta fails to allege the existence of any contract between itself and TDM, Delta's Count IV for breach of contract must be dismissed.

**IV.  This Court Should Dismiss Count V for Tortious Interference with Contract Because the Alleged Breached Contractual Terms are Void as Against Public Policy.**

The basis for Delta's tortious interference with contract theory is that TDM is causing certain third parties who purchased Delta Gift Cards or Delta eGift codes to breach certain terms of their purchase contracts with Delta by reselling the Cards or codes to TDM. *See* Complaint ¶ 83. This entire theory fails as a matter of law, however, because any contractual term which purports to prevent the original purchasers of Delta Gift Cards or Delta eGift codes from re-selling those items is void as an improper restraint on the alienation of chattels or goods.

Although the common law refusal to enforce purported restraints on the alienation of chattels is infrequently discussed in modern times because it is so ingrained in contract law that few think to create such restraints, it remains valid. The Supreme Court relied on this principle when analyzing the first sale doctrine as it relates to copyright law in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538-39 (2013). There, the Supreme Court examined and approved the longstanding tradition of "the common law's refusal to permit restraints on the alienation of

chattels." *Id*. at 538. This venerable common law principle is based on "the importance of leaving buyers of goods free to compete with each other when reselling or otherwise disposing of those goods." *Id*. at 539. *See also Impression Products, Inc. v. Lexmark International, Inc*., 581 U.S. 1523, 1536 (2017) (patent exhaustion doctrine, like copyright first sale doctrine, "has its roots in the antipathy toward restrains on alienation").

The interpretation of Delta's alleged "Delta Gift Card Terms and Conditions" which it is asserting here would amount to an improper restraint on the alienation of goods. Assuming, for the sake of argument, that the alleged contractual term "eGifts and Cards may only be sold by Delta and Delta-licensed vendors" does in fact mean that any purchaser of Delta Gift Cards or Delta eGift codes is contractually prohibited from re-selling such items, such a prohibition would not be legally enforceable. This is not a situation where Delta is licensing some right to the purchaser of the Card or eGift, as Delta itself admits that it "*sells* Delta-branded physical gift cards ("Delta Cards") and electronic gift codes ("Delta eGifts")." Complaint ¶ 33 (emphasis added). Delta is selling an item, frequently a physical item, of defined value to purchasers. Delta even apparently encourages purchasers of these Cards and eGifts to give them to other individuals as "gifts." Under longstanding common law principles, the purchasers of the Gift Cards or eGift codes should be free to resell or otherwise dispose of those goods without interference from the company that sold those items in the first instance. To the extent that Delta's alleged contractual Terms and Conditions interfere with the purchaser's right to resell the purchased item, such Terms and Conditions are void and unenforceable. As a result, Delta cannot state a claim that TDM has induced anyone to breach those Terms and Conditions, and Count V must be dismissed.

**V.      This Court Should Dismiss Counts VI, VII and VIII With Respect to All Alleged Grounds Except the Erroneous Display of the Delta Skymiles Membership Card.**

Counts VI, VII and VIII purport to state claims for common law unfair competition, common law trademark infringement, and violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") based on the same alleged activities as those forming the basis for Counts I and II.  For the same reasons that Delta cannot state claims under the Lanham Act based on TDM's resales of the Gift Cards and eGift codes which Delta originally sold, it cannot state common law or UDTPA claims based on those same acts.

Where a plaintiff makes claims for trademark infringement and unfair competition under the Lanham Act at the same time as parallel claims for Illinois common law trademark infringement and unfair competition, courts analyze the common law and Lanham Act claims under the same principles.  See *Trans Union LLC v. Credit Research, Inc.*, 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001) (Lanham Act trademark infringement, Lanham Act unfair competition, common law trademark infringement, and common law unfair competition claims all subject to same analysis, and therefore "share the same fate").  In addition, "[w]here, as here, the 'plaintiff's factual allegations under the UDTPA also form the basis for the plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.  Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.'" *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F.Supp.2d 872, 884 (N.D. Ill. 2013) (quoting *SB Designs v. Reebok Intl. Ltd.*, 338 F.Supp.2d 904, 914 (N.D. Ill. 2004)).  As a result, to the extent that Delta fails to state claims under Counts I and II, it also fails to state claims under Counts VI, VII and VIII.

Again because of the first sale doctrine, Delta cannot state claims for common law

trademark infringement, common law unfair competition, or violation of UDTPA based on TDM's resale of Delta Gift Cards and Delta eGift codes which Delta itself initially sold. As with Counts I and II, TDM is not challenging the sufficiency of Counts VI, VII or VIII as they may relate to the alleged display of the Skymiles card or the SKYMILES mark. However, TDM is entitled to a ruling dismissing Counts VI, VII or VIII to the extent that they rest on the alleged use of Delta's claimed trademarks (other than the SKYMILES mark) in relation to re-sales of the Delta Gift Cards and Delta eGift codes which Delta itself initially sold.

**VI.  This Court Should Order Delta to Amend its Complaint to Eliminate the Claims and Bases for Claims Which Have Been Dismissed.**

If this Court grants TDM's requested relief dismissing some of Delta's claims and partially dismissing others, many of the factual allegations in the existing Complaint will be superfluous. Counts I, II, III, VI, VII, and VIII would remain, but only to the extent they relate to TDM's alleged display of the Skymiles card or the SKYMILES mark. In order to allow the parties to properly focus on the factual issues actually relevant to the surviving claims, it would make more sense for Delta to file an amended complaint which does not purport to base any of its claims on TDM's re-selling Delta Gift Cards and Delta eGift codes which Delta itself initially sold.

**Conclusion**

This Court should dismiss Delta's Count IV and Count V in their entirety, and should dismiss each of Delta's Counts I, II, III, VI, VII and VIII to the extent that such claims rest on TDM's alleged use of Delta's claimed trademarks (other than the SKYMILES mark) in relation to re-sales of the Delta Gift Cards and Delta eGift codes which Delta itself initially sold.

Respectfully submitted,

TDM INVESTMENTS, LLC

Date:   April 2, 2018    By:   /s/  Mark R. Bagley
        Mark R. Bagley
        TOLPIN & PARTNERS, PC
        100 North LaSalle Street, Suite 501
        Chicago, Illinois 60602
        (312) 698-8971

*Attorney for Defendant*
*TDM INVESTMENTS, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT TDM INVESTMENTS, LLC'S MOTION TO DISMISS** was served via the Northern District of Illinois electronic filing system to:

      Jonathan P. Froemel
      BARNES & THORNBURG LLP
      One N. Wacker Drive, Suite 4400
      Chicago, Illinois 60606

      Kelly O. Wallace
      WELLBORN & WALLACE, LLC
      1175 Peachtree St. NE
      100 Colony Square, Suite 300
      Atlanta, Georgia 30361

on this 2nd day of April, 2018.

                                                    /s/ Mark R. Bagley
                                                    Mark R. Bagley