# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELTA AIR LINES, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-cv-968 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| TDM INVESTMENTS, LLC d/b/a | ) |
| GiftCardSpread.com and JOHN DOES 1-5 | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Delta Air Lines, Inc. ("Delta"), brings this action against TDM Investments, LLC ("TDM"), alleging that TDM engaged in trademark infringement, unfair competition, tarnishment of a famous mark, breach of contract, tortious interference with contract, and violations of the Illinois Uniform Deceptive Trade Practices Act. TDM now moves this Court to dismiss Delta's breach of contract and tortious interference claims and to dismiss Delta's trademark claims based on its use of Delta's corporate logo (as opposed to its use of the Delta Skymiles logo, which is not at issue in this motion). For the following reasons, TDM's motion to dismiss [13] is granted in part and denied in part.

**Background**

The following factual allegations from the complaint are taken as true. Delta is an airline company which uses various trademarks to identify itself and its services, including its Sky Miles loyalty program. Among other things, Delta uses its trademarks to sell physical gift cards and electronic gift codes. Delta's sales of gift cards and gift codes are subject to terms and conditions which state, in pertinent part, "eGifts and Cards may only be sold by Delta and Delta - licensed vendors. eGifts and Cards that are for sale or sold by unlicensed vendors are subject to confiscation or voiding by Delta."

1

TDM buys gift cards from recipients seeking to obtain cash value for their gift cards. TDM then resells the gift cards that it obtains. Among other products, TDM sells Delta gift cards and gift codes. In connection with these sales, TDM has displayed Delta's trademarks, including the Sky Miles symbol, which the parties appear to agree is unrelated to Delta's gift cards. TDM's website also links to Delta's website so that customers can confirm the authenticity of the Delta gift cards and gift codes that it sells.

When Delta discovered TDM's use of its marks, it requested that TDM stop using its marks and reselling its gift cards. TDM removed the Sky Miles logo from its website but continued to use Delta's other marks in advertising the Delta gift cards listed on its website. This litigation followed.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

**Discussion**

*Lanham Act*

TDM first contends that Delta's trademark infringement, unfair competition, and tarnishment claims must be dismissed because TDM's use of Delta's marks to sell Delta gift cards and gift codes is protected under the first sale doctrine.

2

The first sale doctrine limits trademark owners' Lanham Act right to control the distribution of their products. *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 817–18 (N.D. Ill. 2016) (Castillo, J.). Under the first sale doctrine, the right of a producer to control the distribution of its trademarked product terminates after the first sale of the product, unless one of several well-defined exceptions to the first sale doctrine applies. *Id.* at 818. (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995)). Thus, under the first sale doctrine the buyer of a trademarked product may resell that product under the original mark without incurring liability for trademark infringement or unfair competition

Delta argues that the first sale doctrine does not apply here because TDM's conduct falls within the sponsorship exception to the first sale doctrine. Under the sponsorship exception, the first sale doctrine's protections do not extend to resellers who use other entities' trademarks to give the false impression that they are favored or authorized dealers for a product. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006) (citing *D 56, Inc. v. Berry's Inc.,* 955 F. Supp. 908, 910–20 (N.D. Ill. 1997) (Coar, J.)). Thus, use of a plaintiff's trademark in promotional materials such as advertising or displays is not protected by the first sale doctrine, but use of a plaintiff's trademark solely to identify a product being sold is protected by the first sale doctrine. *D 56, Inc.*, 908 F.3d 919–920.

Here, Delta does not allege that TDM used its trademarked materials in advertising content or other promotional materials beyond identifying the products listed on its website. Instead, Delta argues that TDM's sale of Delta products and use of its marks creates an implication that it is an authorized dealer of the products because Delta's terms and conditions for the gift cards at issue provides that "eGifts and Cards may only be sold by Delta and Delta- licensed vendors." The Court, however, can see no mechanism by which Delta's terms and conditions could alter the legal nature of TDM's use of Delta's marks. Delta has not alleged that TDM's customers had knowledge

3

of or access to Delta's terms and conditions, and Delta has offered no case law suggesting that a trademark holder's statements or contracts are relevant considerations when applying the sponsorship exception. The Court therefore concludes that the sponsorship exception does not apply here.

Delta alternatively contends that the first sale doctrine does not apply under the material differences exception. The material difference exception provides that the first sale doctrine does not apply to products that have been materially altered from their original form. An alteration is material if it changes something about a product that is relevant to consumers' decision to purchase the product. *Davidoff & CIE, S.A v. PLD Intern. Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001); *see also Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1073 (10th Cir., 2009).

Delta asserts that TDM's gift cards and gift codes are materially different because TDM offers different terms and conditions of purchase. At least some courts have recognized that changes that alter consumer's ability to avail themselves of a manufacturer's technical support and customer service programs are material differences. *SoftMan Prods. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1093 (C.D. Cal. 2001). As the plaintiff, however, it is not Delta's obligation to anticipate and allege facts to defeat possible affirmative defenses such as the first sale doctrine. Accordingly, it is premature for this Court to determine the applicability of the material differences exception to this case. *See U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (recognizing that plaintiffs are not required to allege facts sufficient to defeat affirmative defenses in their complaint).

TDM's motion to dismiss Delta's Lanham act claims is therefore denied. Because Delta's Illinois claims for unfair competition, trademark infringement, and violation of the Illinois Uniform Deceptive Trade Practices act are subject to the same analysis as Delta's federal trademark claims, TDM's motion to dismiss those claims is also denied. *Desmond v. Chicago Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013) (Castillo, J.); *Trans Union LLC v. Credit Research, Inc.*,

4

142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (Moran, J.).

*Breach of Contract*

TDM also contends that Delta has failed to state a claim for breach of contract because Delta and TDM do not have a contractual relationship. Delta argues that TDM is in privity of contract with the original purchasers of Delta's gift cards and is therefore bound by the contract's provisions. In support of this proposition, Delta relies exclusively on *Green v. Charter One Bank, N.A.*, No. 08 C 1684, 2010 WL 1031907 (N.D. Ill. Mar. 16, 2010) (Gottschall, J.). In *Green*, the court was called upon to determine which parties involved in a gift card transaction were "customers" within the meaning of the National Banking Act. The court found that both the purchaser of the gift card and the ultimate user of the gift card were customers within the meaning of the regulations because the purchaser obtained a product (the gift card) from the bank and the end user obtained a service from the bank by using the gift card to pay for a purchase. *Id.* at 2. TDM, however, was neither the purchaser nor the end-user of the gift cards at issue and therefore would not be a "customer" within the scope of *Green*. Delta has accordingly failed to establish that it has an enforceable contract with TDM for which it can state a breach of contract claim.

*Tortious Interference*

Delta's tortious interference with a contract claim arises from the provision in Delta's gift card terms and conditions providing that "eGifts and Cards may only be sold by Delta and Delta-licensed vendors." TDM contends that this provision is an improper restraint on the alienation of chattels and that the terms and conditions in question are therefore void. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 539, 133 S.Ct. 1351, 185 L.Ed.2d 392 (2013) (describing the first sale doctrine as a common-law principle designed to prevent restraints on the alienation of chattels). Conceding that Illinois law clearly disfavors restraints on the alienation of personal property, Delta

argues that Illinois law does not similarly prohibit restraints on assignments and that restrictions on resale should therefore also be permissible.  Delta offers no law or argument to support the latter proposition, and the caselaw that Delta relies on is inapposite because it exclusively concerns the assignment of settlement agreements under a specific provision of Illinois insurance law.  *See, e.g., Shaffer v. Liberty Life Assur. Co. of Boston*, 746 N.E.2d 285, 293, 319 Ill.App.3d 1048 (2001); *In re Nitz*, 739 N.E.2d 93, 104, 317 Ill.App.3d 119 (2000).  Delta's arguments concerning the Bank Secrecy Act are similarly unavailing; although that Act and its implementing regulations impose record-keeping requirements on the original issues of gift cards, Delta has identified nothing to suggest that the Act is meant to discourage or prohibit the resale of gift cards.

Delta has accordingly failed to establish that the contractual language at issue is not an improper restraint on the alienation of chattels.  Absent such a showing, the Court is obligated by Illinois law to conclude that the provision at issue is void, and to therefore conclude that Delta cannot state a claim for tortious interference with a contract based on that provision.

**Conclusion**

For the above reasons, TDM's partial motion to dismiss [13] is granted with respect to Delta's breach of contract claims (Count IV) and tortious interference with contract claims (Count

V) and denied with respect to Delta's state and federal trademark claims. Counts IV and V are dismissed without prejudice.

IT IS SO ORDERED.

Date: 8/10/2018

Entered: _____

SHARON JOHNSON COLEMAN

United States District Court Judge